IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LORRAINE NEFF | § | |
|     Plaintiff | § § § | |
| v. | § § | Case No. 21-1295 |
| FROST BANK | § § | |
|     Defendant. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

For her Original Complaint against Frost Bank for violations of the Family and Medical Leave Act of 1993, as amended (FMLA), Title VII of the Civil Rights Act of 1964, as amended (Title VII), and the Americans with Disabilities Act, as amended (ADA), Plaintiff Lorraine Neff shows the following:

**INTRODUCTION**

1.  Frost Bank employed Neff from February 11, 1991 until January 17, 2020, when Frost Bank wrongfully terminated Neff's employment. At the time Frost Bank wrongfully terminated Neff's employment, Neff held positions with Frost Bank as Vice President of Trust Operations and Supervisor of Fee Area.

2.  On November 11, 2019, Neff necessarily underwent major back surgery. Neff's doctor released Neff to return to work on a limited, part-time basis after December 1, 2019. Neff was released by her doctor to return to work full time on January 1, 2020, subject to only a restriction on lifting objects over 20 pounds.

3.  The department Neff worked in at Frost Bank underwent a reorganization related to implementing a new Trust system during the same time Neff needed back surgery. Neff's

supervisor, Liz Gonzaba, opposed Neff having back surgery during the reorganization period because she would miss training on the new system, although Neff had already attended numerous training sessions before the surgery. Frost Bank discriminated against and retaliated against Neff because of her disabling back condition, ultimately terminating Neff's employment. Also, Frost Bank retaliated against Neff because Neff took FMLA-protected medical leave to undergo back surgery. Upon Neff's full-time return to work in January 2019, Frost Bank and Neff's supervisors created a pretextual reason to terminate Neff's employment, which constituted further harassment and retaliation against Neff for taking FMLA-protected medical leave and on account of her disability.

4. Neff specifically conveyed to a Frost Bank HR Representative that she felt as though she was being specifically targeted by Gonzaba. Gonzaba issued Neff an Employee Warning Report shortly after Neff returned from FMLA-protected leave; Frost Bank wrongfully terminated Neff's employment only two weeks later.

## PARTIES

5. Plaintiff **Lorraine Neff** is an individual residing in San Antonio, Bexar County, Texas. She may be served in this case through the undersigned counsel.

6. Defendant **Frost Bank** is and at all relevant times was a Texas State Financial Institution and may be served through private process by delivery of citation to its registered agent, Trey Banack, at 111 W. Houston Street, San Antonio, Texas 78205.

## JURISDICTION AND VENUE

7. The court holds subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Neff's claims against Frost derive from Frost's violations of several federal laws, specifically the FMLA, as amended, *see* 29 U.S.C. § 2601 *et seq.*, Title VII, as amended, *see* 42

U.S.C. § 2000 *et seq.*, and the ADA, as amended, *see* 42 U.S.C. § 12101 *et seq*. The court holds personal jurisdiction over Frost both because Frost is organized under the laws of the State of Texas, and because Frost regularly conducts business in the State of Texas.

8. Venue for this action is proper in the Western District of Texas, San Antonio Division, because all the events giving rise to Neff's claims occurred within said District and Division. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

9. Frost employed Neff for nearly 29 years, from February 11, 1991 until January 17, 2020, when Frost wrongfully terminated Neff's employment. At the time Frost wrongfully terminated Neff's employment, Frost employed Neff as both a Vice President of Trust Operations and Supervisor of Fee Area. Prior to Frost terminating her employment, Neff held her position as a Frost Vice President for 17 years, from 2003 to 2020.

10. During her tenure with Frost, Neff received numerous positive performance reviews. Also, Neff received a merit-based raise in April 2019. Upon Neff's receipt of this merit-based raise, Neff's supervisor Liz Gonzaba told Neff to "keep doing what you are doing."

11. In August 2019, Neff informed Gonzaba that Neff needed back surgery; shortly after informing Gonzaba about the surgery, the employment discrimination and retaliation alleged herein began—and later culminated in Frost wrongfully terminating Neff's employment.

12. Gonzaba assumed the role of Neff's previous supervisor, Linda Giada, when Giada retired in July 2018. During her tenure as Neff's supervisor, Giada reported no issues with Neff's performance; in fact, Frost documented no performance issues against Neff for the first twenty-eight years of Neff's employment with Frost. The only negative performance reviews Neff received in

3

her nearly three-decade employment tenure with Frost came after Gonzaba became Neff's supervisor in September 2019.

13. Gonzaba began documenting negative reviews of Neff's performance in Fall 2019, shortly after Neff was approved to take FMLA leave for necessary back surgery beginning November 11, 2019. Upon Neff's return to work following her back surgery, Neff complained to Frost HR Representative Virginia Gonzalez about Gonzaba's harassment and cited to Gonzalez that she felt she was being specifically targeted by Gonzaba.

14. In September 2019, Frost approved Neff to take intermittent FMLA medical leave so Neff could receive necessary medical treatment for her documented auto-immune disorder. That same month, Gonzaba approached Neff and asked her to give a statement against another employee to assist Gonzaba's efforts to terminate the other employee's employment with Frost. Neff recognized that Gonzaba sought statements that would reflect negatively on the employee. Also, Neff understood that obtaining the negative statements that Gonzaba sought against the other employee would have required Neff intimidating and coercing other Frost employees into making the statements——like how Gonzaba later obtained statements against Neff. So, based on her reasonable belief that Gonzaba's request was discriminatory, Neff refused Gonzaba's request and opposed Gonzaba's unlawful, discriminatory conduct.

15. On November 11, 2019, Neff underwent major back surgery. Neff's doctor allowed her to return to part-time work on December 1, 2019, subject to several specific limitations. Neff was released by her doctor to return to work full time beginning on January 1, 2020, subject only to a 20-pound lifting restriction.

16. In a note Gonzaba recorded on November 25, 2019—while Neff was taking FMLA leave after undergoing back surgery—Gonzaba expressly stated, "While [Neff] was out on medical [*sic*]

there were things that she did not address, process, provide information back timely . . . ." Gonzaba's note seemingly alleges specific, employment-related omissions by Neff during the period that Neff took medical leave for her back surgery. Yet the allegations made against Neff in Gonzaba's note wholly ignore both that Frost approved Neff's request to take FMLA-protected leave to undergo back surgery, and that federal law afforded Neff protections while Neff took medical leave to which she was entitled under the FMLA. Also, Gonzaba's complaint alleges Neff's failure to complete tasks that would necessarily be delegated either to Gonzaba—as Neff's supervisor—or to another Frost employee during Neff's FMLA-protected absence from work.

17. Further, Frost failed to follow its own progressive discipline policy when terminating Neff's employment. Although Neff's employment with Frost was "employment-at-will," any employee with both a twenty-eight-year tenure and a performance record as positive as Neff's should benefit from Frost following its own discipline policy—unless Frost acted upon a discriminatory or retaliatory motive when terminating Neff's employment.

18. Frost has provided only pretextual reasons for its adverse employment actions taken against Neff; so, Neff's discharge appears devoid of a lawful basis. Instead, Frost seemingly terminated Neff's employment unlawfully, acting upon a discriminatory and retaliatory motive against Neff both because Neff took FMLA-protected medical leave during a departmental reorganization and because of Neff's disabilities.

19. On June 4, 2020, within 180 days of the occurrence or act complained of herein, Neff filed with the Equal Employment Opportunity Commission (EEOC) a Charge alleging that Frost engaged in employment-related discrimination and retaliation against Neff in violation of numerous federal laws. The EEOC issued Neff a right to sue letter on October 15, 2021.

**LIABILITY**

20. At all relevant times, Gonzaba was an employee and vice-principal of Frost; therefore, Frost is liable for both Gonzaba's wrongful conduct and its own wrongful conduct under the Respondeat Superior theory of liability.

21. Upon information and belief, Frost ratified Gonzaba's unlawful conduct by taking no action to stop Gonzaba's actions against Neff, despite Frost's clear awareness of the unlawfulness of Gonzaba's conduct; in this regard, Frost encouraged Gonzaba's discriminatory and retaliatory conduct.

22. Frost employees, while acting in a managerial capacity for and on behalf of Frost, engaged in discriminatory practices with malice or reckless indifference to Neff's federally protected rights.

**CAUSE OF ACTION: FMLA VIOLATIONS**

23. Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 22.

24. Frost is a covered employer under the FMLA because Frost employs more than fifty employees.

25. Neff is an eligible employee under the FMLA because she worked more than 1250 hours in each year of her employment with Frost.

26. Frost controlled the terms and conditions of Neff's employment. Upon information and belief, Frost not only interfered with Neff's ability to take FMLA-protected leave, but also terminated Neff's employment in retaliation for Neff taking FMLA-protected medical leave.

27. The FMLA entitles eligible employees to take up to 12 weeks of leave in a one-year period following certain events, such as a serious medical condition; a family member's serious illness; or the birth of a child. *See* 29 U.S.C. § 2612(a)(1). FMLA leave must be granted when "medically necessary," either on a part-time intermittent basis or on a full-time basis. *Id.* § 2612(b)(1). Upon

an employee's timely return to work from FMLA leave, the employer must reinstate the employee to his or her former position or an equivalent position. *Id.* § 2614(a)(1). The FMLA makes it unlawful for an employer to: (i) "interfere with, restrain, or deny the exercise of" FMLA rights, 29 U.S.C. § 2615(a)(1); (ii) discriminate against those who exercise their rights under the FMLA, 29 U.S.C. § 2615(a)(2); and (iii) retaliate against a person who files charges, gives information, or testifies in any inquiry related to an assertion of rights under the FMLA, 29 U.S.C. § 2615(b).

28. Neff was entitled to take FMLA leave.

29. Neff gave Frost notice of her intention to take FMLA leave, and Frost approved Neff's requests to take FMLA leave for both her auto-immune disorder treatments and her major back surgery.

30. Frost, directly and through the actions of its employees and vice-principals, denied Neff benefits to which she was entitled under the FMLA.

31. Neff was qualified for the positions she held with Frost before Frost wrongfully terminated her employment.

32. Neff took FMLA leave to which she was entitled, despite Frost's wrongful efforts to interfere with and deny her ability to do so.

33. Neff suffered an adverse employment action or actions.

34. There is a causal connection between Neff exercising her rights under the FMLA and Frost terminating Neff's employment.

35. Thus, Frost's acts and omissions alleged herein constituted discrimination and retaliation in violation of the FMLA.

## CAUSE OF ACTION: TITLE VII VIOLATIONS

36. Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 22.

37. Frost, both directly and through its employees and vice-principals, discriminated against and retaliated against Neff because Neff opposed workplace discrimination.

38. Title VII prohibits employers from discriminating or retaliating against employees who engaged in protected activities, such as opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a).

39. Frost employs more than 15 employees, so Frost is a covered employer under Title VII.

40. Neff engaged in a protected activity when she opposed a discriminatory practice by refusing Gonzaba's September 2019 order to obtain statements against another Frost employee. Neff refused Gonzaba's order because she reasonably believed that Gonzaba's order required her to carry out unlawful employment discrimination. Frost knew that Neff engaged in a protected activity, and Frost thereafter terminated Neff's employment. But for Frost's motive to discriminate against and retaliate against Neff for engaging in a protected activity, Frost would not have terminated Neff's employment or subjected Neff to other adverse employment actions.

41. Frost's conduct, both directly and through its employees' and vice-principals' conduct while acting in a managerial capacity, constituted unlawful discrimination and retaliation against Neff in violation of Title VII, as well as several other federal laws.

## CAUSE OF ACTION: ADA VIOLATIONS

42. Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 22.

43. The ADA prohibits employers from discriminating against employees and other persons with disabilities. 42 U.S.C. § 12112(a). Employers may engage in disability discrimination in violation of the ADA through several means, such as failing to provide reasonable accommodation for an employee's disability or discharging an employee based on the employee's disability. *See id.* § 12112(b).

44. While employed by Frost, Neff suffered from multiple physical impairments that each substantially limited at least one major life activity. The ADA recognizes such impairments as disabilities. Frost knew or should have known of Neff's actual disabilities. Also, upon information and belief, Frost perceived Neff as disabled.

45. Despite her actual and perceived disabilities, Neff was clearly qualified for her positions with Frost, as evidenced by her twenty-eight-year record of positive performance with Frost before Gonzaba assumed the role as Neff's supervisor in Fall 2019.

46. Frost terminated Neff's employment during a period in which Neff needed accommodation for her disabilities and properly took leave protected by the FMLA.

47. Upon information and belief, after terminating Neff's employment, Frost either left open Neff's positions or filled Neff's positions with non-disabled employees.

48. Also, Frost failed to provide reasonable accommodations to the known physical limitations of Neff who, although impaired, was otherwise qualified for her positions.

49. In sum, Frost's actions, both directly and through the conduct of its employees and vice-principals while acting in a managerial capacity, caused Neff to suffer an adverse employment action based on and because of her disabilities. Thus, Frost unlawfully discriminated against Neff on account of Neff's disabilities, which discrimination violated the ADA.

## DAMAGES

50. Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 49.

### *FMLA: Actual Damages & Attorney's Fees*

51. Frost's wrongful conduct caused Neff to suffer actual damages, including but not limited to lost wages and employee benefits in the past and lost wage-earning capacity in the future. Neff seeks fair and reasonable compensation, as authorized by the FMLA, for the actual damages she

suffered because of Frost's unlawful conduct. *See* 29 U.S.C. § 2617(a).

52. Neff also seeks to recover all reasonable attorney's fees and other costs incurred in the prosecution of this case, as authorized by the FMLA. *See id.* § 2617(a)(3).

### *FMLA: Liquidated Damages*

53. Frost violated the FMLA's anti-discrimination and anti-retaliation provisions and, in doing so, Frost neither acted in good faith nor possessed reasonable grounds for believing that its conduct was not a violation of the FMLA.

54. Accordingly, the FMLA entitles Neff to recover from Frost liquidated damages in an amount equal to actual damages allowed plus interest. *See id.* § 2617(a)(1)(A)(iii).

### *Title VII: Compensatory Damages & Attorney's Fees*

55. As a result of the incidents alleged herein, Neff incurred damages in the form of lost earnings. As a proximate result of the wrongful acts of the Frost, Neff has suffered an extreme loss and reduction in income and other valuable employment rights for which she sues.

56. Neff seeks also, to the extent permitted by law, (i) differential in earnings, (ii) back pay, (iii) lost wages, (iv) front pay, (v) lost future earnings, and (vi) diminished earning capacity.

57. As a result of Frost's unlawful conduct, Neff suffered shame and humiliation, embarrassment, mental pain and anguish, and lost benefits in the past, and Neff will likely continue to suffer some, if not all, of these damages in the future.

58. Under Title VII, Neff may recover from Frost reasonable and necessary attorney's fees, and Neff seeks to recover such fees incurred in prosecuting this action. In this regard, Neff employed the undersigned counsel to assist her in prosecuting this action. A reasonable attorney's fee is required for the work expended in litigating this cause, as well as a reasonable fee for all appeals to other courts, including the Court of Appeals and/or the Supreme Court.

*ADA: Compensatory Damages & Attorney's Fees*

59. Because of Frost's wrongful conduct, Neff suffered actual damages, including but not limited to future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages; Neff seeks recovery for such actual damages through this action. Neff seeks also, to the extent permitted by law, other relief that the court may find just and equitable, including but not limited to back pay, interest on back pay, and lost benefits.

60. The ADA authorizes Neff to recover from Frost a reasonable attorney's fee and costs, including litigation expenses, upon prevailing in this action. In this regard, Neff employed the undersigned counsel to assist her in prosecuting this action. A reasonable attorney's fee is required for the work expended in litigating this cause, as well as a reasonable fee for all appeals to other courts, including the Court of Appeals and/or the Supreme Court. Thus, Neff seeks to recover such attorney's fee and costs upon a final judgment in her favor.

*Title VII & ADA: Exemplary Damages*

61. Frost ratified the unlawful conduct of Gonzaba and its other employees and vice-principals.

62. Neff is entitled to recover and seeks an award of exemplary damages against Frost because Frost, directly and through the conduct of its employees and vice-principals while acting in a managerial capacity, engaged in discriminatory practices with either malice or reckless indifference to Neff's federally protected rights, or both.

63. Accordingly, Frost is liable to Neff for exemplary damages awarded for such conduct, and Neff is entitled to a jury instruction regarding exemplary damages.

**CLAIMS FOR RELIEF**

64. Neff requests trial by jury.

65. Neff seeks damages in an amount that the jury, in its role as trier of the facts in this case, determines just and appropriate. Additionally, Neff seeks recovery of all equitable relief and damages that the court may determine equitable and just, to the extent permitted by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lorraine Neff prays that, upon final judgment, she be awarded the following relief:

    a.    Lost wages and benefits in the past and in the future;
    b.    Liquidated damages;
    c.    Exemplary damages;
    d.    Attorney fees;
    e.    Costs of court; and
    f.    All other relief to which she is entitled at law or equity.

Respectfully submitted,

Law Offices of Paul G. Vick
Paul G. Vick
SBN:  20563950
12703 SPECTRUM DRIVE, SUITE 100C
San Antonio, Texas 78249
(210)-735-1794 Telephone
(210)-733-7510 Telecopier

Fredericksburg Texas Office
150 E. Main Street, Suite 306
Fredericksburg, Texas 78624
830-998-8425

BY:    /s/ Paul G. Vick
        Paul G. Vick
        State Bar No. 20563950
        Attorney for Plaintiff